Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com
[Additional Captions on Signature Page]
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT POLLACK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BARRACUDA NETWORKS, INC., WILLIAM D. JENKINS, JR., JEFFRY R. ALLEN, JOHN HARVEY KISPERT, STEPHEN P. MULLANEY, MICHAEL D. PERONE, and CHET KAPOOR,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Robert Pollack ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Barracuda Networks, Inc. ("Barracuda" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Barracuda, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Barracuda and certain affiliates of Thoma Bravo, LLC ("Thoma Bravo").

2.      On November 26, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $27.55 in cash for each share of Barracuda stock they own (the "Merger Consideration"), a transaction valued at $1.6 billion.

3.      On January 9, 2018, in order to convince Barracuda shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading definitive Proxy Statement on a Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information in violation of Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each as required by Section 14(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) management's financial projections for the Company that were relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger; and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

(ii) financial projections utilized by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").

6.      It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Barracuda stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Barracuda is headquartered in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of Barracuda common stock.

12.     Defendant Barracuda is incorporated in Delaware and maintains its principal

3

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  executive offices at 3715 South Winchester Boulevard, Campbell, California 95008.    The

2  Company's common stock trades on the NYSE under the ticker symbol "CUDA."

3         13.    Individual Defendant William D. Jenkins, Jr. has served as President, Chief

4  Executive Officer, and a director of the Company since November 2012.

5         14.    Individual Defendant Jeffry R. Allen has served as a director of the Company since

6  2007.

7         15.    Individual Defendant John Harvey Kispert has served as a director of the Company

8  since August 2016.

9         16.    Individual Defendant Stephen P. Mullaney has served as a director of the Company

10  since April 2017.

11         17.    Individual Defendant Michael D. Perone has served as a director of the Company

12  since 2003.

13         18.    Individual Defendant Chet Kapoor has served as a director of the Company since

14  April 2017.

15         19.    The Individual Defendants referred to in paragraphs 13-18 are collectively referred

16  to herein as the "Individual Defendants" and/or the "Board."

17                              **CLASS ACTION ALLEGATIONS**

18         20.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself

19  and the other public shareholders of Barracuda (the "Class").    Excluded from the Class are

20  Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated

21  with any Defendant.

22         21.    This action is properly maintainable as a class action because:

23                a.    The Class is so numerous that joinder of all members is impracticable.  As of

24  December 26, 2017, there were approximately 53,666,055 shares of Barracuda common

25  stock outstanding, held by hundreds of individuals and entities scattered throughout the

26  country.  The actual number of public shareholders of Barracuda will be ascertained through

27  discovery;

28
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

      i)      whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

      ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

      iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

      iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.      The Proposed Merger**

22.      Barracuda is an information technology services company, which offers content security, networking, and application delivery, as well as data storage, protection, and disaster recovery services to customers worldwide.

23.      On November 27, 2017, Barracuda issued a press release announcing the Proposed Merger, which states in pertinent part:

> **Campbell, CA – Nov. 27, 2017 –** Barracuda Networks, Inc. (NYSE: CUDA), a leading provider of cloud-enabled security and data protection solutions, today announced that it has entered into an agreement to be acquired by leading private equity investment firm Thoma Bravo, LLC. in an all-cash transaction valued at $1.6 billion.
>
> Barracuda shareholders of record will receive $27.55 in cash for each share of Barracuda common stock they hold. This price exceeds Barracuda's 52-week high, and represents a premium of 22.5 percent to the Company's 10-day average stock price prior to Nov. 27, 2017, of $22.49. Barracuda's Board of Directors unanimously approved the agreement, and believes the transaction maximizes shareholder value. Upon the close of the transaction, Barracuda will operate as a privately-held company with a continued focus on email security and management, network and application security, and data protection solutions that can be deployed in cloud and hybrid environments.
>
> "We believe the proposed transaction offers an opportunity for us to accelerate our growth with our industry-leading security platform that's purpose-built for highly distributed, diverse cloud and hybrid environments. We will continue Barracuda's tradition of delivering easy-to-use, full-featured solutions that can be deployed in the way that makes sense for our customers," said BJ Jenkins, chief executive officer of Barracuda. "Thoma Bravo has an excellent history of investing in growing security businesses, and this transaction speaks to the value and strength of Barracuda's security platform, which helps customers protect and manage their networks, applications, and data. I expect that our employees, customers, and partners will benefit from this partnership."

6

"Barracuda is a proven industry leader, consistently bringing powerful, comprehensive solutions to customers in an increasingly prevalent, hostile, and complex threat environment," said Seth Boro, a managing partner at Thoma Bravo. "We believe that Barracuda is at the forefront of innovation in several highly strategic areas of the cybersecurity market and are excited to be the company's partner in the next phase of its growth."

24.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.  For instance, the Company has reported double-digit sales growth since 2014, positive EBITDA growth since 2015, and positive net income in 2016, the Company's first positive net income report.

25.     In sum, it appears that Barracuda is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**II.     The Materially Incomplete and Misleading Proxy**

26.     On January 9, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

***Financial Projections that Violate Regulation G and SEC Rule 14a-9***

27.     The Proxy discloses certain financial projections for the Company on pages 51-53 of the Proxy.  However, the Proxy fails to provide material information concerning the projections, which were developed by the Company's management and relied upon by the Board in

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1    recommending that the shareholders vote in favor of the Proposed Merger.  Proxy 51.

2        28.    Specifically, the Proxy provides values for Non-GAAP ("Generally Accepted

3    Accounting Principles") Gross Profit, Non-GAAP Operating Income, Adjusted EBITDA,

4    Historical Adjusted EBITDA, and Adjusted Free Cash Flow, but fails to provide: (i) the projected

5    values for the line items used to calculate these non-GAAP measures; or (ii) a reconciliation of the

6    non-GAAP projections to the most comparable GAAP measures, in direct violation of Regulation

7    G and consequently Section 14(a).  Proxy 53.

8        29.    When a company discloses non-GAAP financial measures in a Proxy that were

9    relied on by a board of directors to recommend that shareholders exercise their corporate suffrage

10   rights in a particular manner, the Company must, pursuant to SEC regulatory mandates, also

11   disclose all projected values for the line items and information necessary to make the non-GAAP

12   measures not misleading, and must provide a reconciliation (by schedule or other clearly

13   understandable method) of the differences between the non-GAAP financial measure disclosed or

14   released with the most comparable financial measure or measures calculated and presented in

15   accordance with GAAP.  17 C.F.R. § 244.100.

16       30.    Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial

17   measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has

18   stated that the frequent use by publicly traded companies of unique company-specific non-GAAP

19   financial measures (as Barracuda included in the Proxy here), implicates the centerpiece of the

20   SEC's disclosures regime:

21           In too many cases, the non-GAAP information, which is meant to supplement the
             GAAP information, has become the key message to investors, crowding out and
22           effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant,
             Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I,
23           along with other members of the staff, have spoken out frequently about our concerns
             to raise the awareness of boards, management and investors.  And last month, the staff
24           issued guidance addressing a number of troublesome practices *which can make non-
             GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP
25           measures; exclusion of normal, recurring cash operating expenses; individually
             tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash
26           per share data.  I strongly urge companies to carefully consider this guidance and
             revisit their approach to non-GAAP disclosures.  I also urge again, as I did last

27

28
                                                  8
     **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
                    **OF THE SECURITIES EXCHANGE ACT OF 1934**

December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

31.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DI") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

32.     More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

33.     Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party such as financial banker has utilized projected non-GAAP financial measures to render a report or opinion to the Board.  To the extent the Board also examined and relied on

---

[1]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]     *Non-GAAP Financial Measures*, U.S. Securities and Exchange Commission (Oct. 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101.  To be sure, there are other situations where Regulation G would not apply but are not applicable here.

9

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

internal financial projections to recommend a transaction, Regulation G applies.

34.     Because the Proxy explicitly discloses that the projections were provided by the Company to the Board "in connection with the comprehensive strategic and financial review process," Proxy 51, no exemption from Regulation G is applicable.

35.     Thus, in order to bring the Proxy into compliance with Regulation G as well as cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 51-53, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

36.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading. Indeed, the Defendants acknowledge the misleading nature of non-GAAP projections as Barracuda stockholders are cautioned:

> The non-GAAP financial measures are not meant to be considered in isolation or as a substitute for comparable GAAP measures and should be read in conjunction with Barracuda's consolidated financial statements prepared in accordance with GAAP.

Proxy 52.

### *Financial Projections Utilized in the Financial Analyses that Violate SEC Rule 14a-9*

37.     Moreover, certain line items of the projections were also utilized by the Company's financial advisor, Morgan Stanley, to render a report to the Board of its opinion regarding the fairness of the Proposed Transaction.  Proxy 41.  Specifically, Morgan Stanley, based upon guidance from the Company's management and Management's Projections discussed above, calculated the Company's unlevered free cash flows ("UFCF").  As further disclosed, Morgan Stanley utilized several undisclosed line items, including (i) stock-based compensation expense, (ii) cash taxes, (iii) changes in net working capital, and (iv) capital expenditures.  Proxy 46.[4]

---

[4]     Plaintiff alleges, based on the clear and plain language of Regulation G, that all non-GAAP internal financial forecasts that were relied on by the Board must comply with Regulation G, even if Barracuda also utilized those financial forecasts.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

38.     The definition of UFCF is, in and of itself, and separate and apart from the mandates of Regulation G, materially false and/or misleading in violation of SEC Rule 14a-9 (17 C.F.R. 240.14a-9).  Because the line items used to calculate UFCF were not disclosed, stockholders are unable to discern the veracity of Morgan Stanley's discounted cash flow ("DCF") analysis. Without further disclosure of the line items used in its UFCF calculation, stockholders are unable to compare Morgan Stanley's UFCF calculations with the Company's financial projections.  Thus, the Company's stockholders are being materially misled regarding the value of the Company.

39.     These key inputs are material to Barracuda shareholders, and their omission renders the summary of Morgan Stanley's DCF valuation analysis incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value… The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

40.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

• The consideration to be received by Barracuda stockholders in the Merger will consist entirely of cash, which provides liquidity and certainty of value to Barracuda stockholders. The Board of Directors believed that this certainty of value was compelling compared to the long-term value creation potential and execution risks underlying Barracuda's business plan as a standalone company. . . .

11

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

- The financial analysis presentations of Morgan Stanley that were delivered to the Board of Directors in connection with their consideration and review of the Merger, and the oral opinion of Morgan Stanley, subsequently confirmed in writing, delivered to the Board of Directors that, as of November 26, 2017 and based upon and subject to the assumptions made, procedures followed, matters considered and qualifications and limitations on the scope of the review undertaken by Morgan Stanley as set forth in its opinion, the $27.55 Per Share Merger Consideration to be received by the holders of our common stock pursuant to the Merger Agreement was fair, from a financial point of view, to such holders, as more fully described below under the caption "The Merger— Fairness Opinion of Morgan Stanley & Co. LLC".

Proxy 37-38.

41.     In sum, the Proxy independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from Barracuda shareholders.

42.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45. As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

46. The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder)**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

49. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

50. Defendants have issued the Proxy with the intention of soliciting shareholder

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

51. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

52. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

53. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

54. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

55. Barracuda is also deemed negligent as a result of the Individual Defendants'

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1    negligence in preparing and reviewing the Proxy.

2        56.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the

3    Class, who will be deprived of their right to cast an informed vote if such misrepresentations and

4    omissions are not corrected prior to the vote on the Proposed Merger.

5        57.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

6    of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

7    and irreparable injury that Defendants' actions threaten to inflict.

8                                    **COUNT III**

9                     **(Against the Individual Defendants for Violations**
10                     **of Section 20(a) of the Exchange Act)**

11       58.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

12   herein.

13       59.    The Individual Defendants acted as controlling persons of Barracuda within the

14   meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

15   officers and/or directors of Barracuda, and participation in and/or awareness of the Company's

16   operations and/or intimate knowledge of the incomplete and misleading statements contained in

17   the Proxy filed with the SEC, they had the power to influence and control and did influence and

18   control, directly or indirectly, the decision making of the Company, including the content and

19   dissemination of the various statements that Plaintiff contends are materially incomplete and

20   misleading.

21       60.    Each of the Individual Defendants was provided with or had unlimited access to

22   copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

23   shortly after these statements were issued and had the ability to prevent the issuance of the

24   statements or cause the statements to be corrected.

25       61.    In particular, each of the Individual Defendants had direct and supervisory

26   involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

27   the power to control or influence the particular transactions giving rise to the Exchange Act

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

62.     In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

65.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1    C.    Directing the Defendants to account to Plaintiff and the Class for all damages sustained

2  as a result of their wrongdoing;

3    D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable

4  attorneys' and expert fees and expenses; and

5    E.    Granting such other and further relief as this Court may deem just and proper.

6                        **JURY DEMAND**

7    Plaintiff demands a trial by jury on all issues so triable.

8

9  Dated:  January 15, 2018

10                                        Respectfully submitted,

11                                        **FARUQI & FARUQI, LLP**

12  **OF COUNSEL:**

By: */s/ Benjamin Heikali*

13  **FARUQI & FARUQI, LLP**                Benjamin Heikali, Bar No. 307466
14  Michael Van Gorder (#6214)             10866 Wilshire Blvd., Suite 1470
    20 Montchanin Road, Suite 145          Los Angeles, CA 90024
15  Wilmington, DE 19807                   Tel.: (424) 256-2884
    Tel.: (302) 482-3182                   Fax: 424.256.2885
16  Email: mvangorder@faruqilaw.com        Email: bheikali@faruqilaw.com

17  **FARUQI & FARUQI, LLP**                *Counsel for Plaintiff*
18  Nadeem Faruqi
    James M. Wilson, Jr.
19  685 Third Ave., 26th Fl.
    New York, NY 10017
20  Tel.: (212) 983-9330
    Email: nfaruqi@faruqilaw.com
21  Email: jwilson@faruqilaw.com

22  *Counsel for Plaintiff*

23

24

25

26

27

28
                                   17

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Robert Pollack ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Barracuda Networks, Inc. ("Barracuda") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Barracuda securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 12th day of January 2018.

Robert Pollack
Robert Pollack

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 05/19/17 | 250 |
| | | |
| | | |
| | | |